Philip A. Nicholas, WSB # 5-1785
Meggan J. Nicholas, WSB # 7-4856
Nicholas & Tangeman, LLC
P.O. Box 928
Laramie, Wyoming 82073
(307) 742-7140
(307) 742-7160 – Fax
nicholas@wyolegal.com
mnicholas@wyolegal.com

Thomas E. Lubnau, WSB # 5-2218
Lubnau Law Office, PC
P.O. Box 1028
Gillette, Wyoming 82717
(307) 682-1313
(307) 682-9340
tom@etseq.com

| | | |
|---|---|---|
| STATE OF WYOMING | ) | IN THE DISTRICT COURT |
| | ) ss. | FIFTH JUDICIAL DISTRICT |
| COUNTY OF BIG HORN | ) | Civil Action No. 2018- 000105 |

|  |  |
|---|---|
| ROBERT ALLEN HARVEY and ELAINE HARVEY, ) ) | Clerk of District Court |
| Plaintiffs, ) | |
| vs. ) | FILED DEC 2 6 2018 |
| HALLIBURTON ENERGY SERVICES, INC., ) | |
| Defendant. ) | by SERENA K. LIPP |

# COMPLAINT

Plaintiffs Robert Allen Harvey and Elaine Harvey allege as follows:

### NATURE OF THE CLAIMS

1.     This is an action for equitable relief, as well as monetary damages, to redress Defendant's unlawful employment practices, including Defendant's unlawful discrimination against Plaintiff because of his age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq, because of his disability, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and for violations of the Wyoming Fair Employment Practices Act of 1956, as amended.



*Complaint, Page 1 of 15 pages.*

## JURISDICTION AND VENUE

2. The amount in controversy exceeds $75,000 and this Court has original jurisdiction over the parties and subject matter of this dispute.

3. Venue is proper in this district because the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## PARTIES

4. Plaintiffs Robert Harvey and Elaine Harvey are Wyoming natives residing in Lovell, Big Horn County, Wyoming.

5. Defendant Halliburton Energy Services, Inc., is a Delaware corporation which is authorized to conduct business in the state of Wyoming ("Halliburton").

6. At all relevant times, Defendant owned and operates a bentonite mining and production facility under the name Bentonite Performance Materials ("BPM") in Lovell, Wyoming.

7. At all relevant times, Plaintiff Mr. Harvey met the definition of an "employee" under all applicable statutes.

8. At all relevant times, Defendant Halliburton met the definition of an "employer" under all applicable statues.

9. At all relevant times, Plaintiff was the employee of Defendant Halliburton.

## PROCEDURAL REQUIREMENTS

10. Plaintiff Mr. Harvey has complied with all statutory prerequisites to filing this action.

11. On or about April 7, 2016, Mr. Harvey timely filed a Charge of Discrimination with the State of Wyoming, Department of Workforce Services – Labor Standards, Wyoming

Fair Employment Program.

12. The Charge of Discrimination charges Defendant with unlawful discriminatory employment practices because of age and disability.

13. On March 1, 2018, the Department of Workforce Services rendered a determination finding that "evidence obtained during the investigation to date establishes a violation of federal and state statutes and based on a preponderance of the evidence, I hereby issue a finding of probable cause to believe discrimination occurred."

14. On October 17, 2018, the United States Employment Opportunity Commission issued a Notice of Right to Sue attached hereto as Exhibit A.

15. More than 60 days has passed since the filing of Plaintiff's April 7, 2016 charge of discrimination.

### STATEMENT OF FACTS

16. On March 16, 2016, Defendant Hallibuton terminated Plaintiff Mr. Harvey's employment with its BPM plant facility located near Lovell, Wyoming.

17. At the time he was terminated by Hallibuton, Mr. Harvey was 61 years of age.

18. At the time he was terminated by Halliburton, Mr. Harvey had given 42 years of service to the bentonite industry.

19. At the time he was terminated by Halliburton, Mr. Harvey had given over 21 years of service to the BPM facility.

20. At the time he was terminated by Halliburton, Mr. Harvey had given over 17 years of service to Halliburton.

21. Mr. Harvey worked in supervisory roles in the Bentonite industry for 36 years.

22. Plaintiff began his career in the bentonite industry working as lead man on packing crews and worked himself up to the position of plant manager at American Colloid.

23. After leaving American Colloid, Mr. Harvey worked for a short time in the Georgia Pacific wall board plant.

24. In 1994, Bentonite Performance Minerals, LLC ("BPM LLC") recruited Mr. Harvey to leave Georgia Pacific to work at its BPM facility.

25. BPM recruited Mr. Harvey to set up the lab at the BPM's plant which had been mothballed for several years.

26. For the next 21 years, Plaintiff worked as the Quality Assurance/Quality Control Supervisor at the BPM facility, where he supervised all lab personnel.

27. In 1998/1999 Halliburton acquired Bentonite Performance Minerals, LLC and became Mr. Harvey's employer.

28. Mr. Harvey served as the Quality Assurance/Quality Control Supervisor at Halliburton's' BPM facility from the time of its acquisition until his termination.

29. Mr. Harvey was responsible for ensuring BPM's lab and its products complied with the American Petroleum Institute (API) and National Sanitation Foundation (NSF) standards ensuring that all lab personnel followed procedures so as to maintain its API and NSF certification with every audit.

30. Mr. Harvey also assisted other Halliburton bentonite plants with their API quality control through internal audit processes.

31. Mr. Harvey was a subject matter expert in Quick Gel, one of the main stay products BPM produces.

32. Due in part to the efforts of Mr. Harvey, Quick Gel was produced at the Lovell Plant.

33. Mr. Harvey traveled to Lima, Peru and New Orleans, LA to teach Halliburton employees how to produce Quick Gel.

34. In 1995, Mr. Harvey attended and successfully completed the Baroid Mud School.

35. In 1999, Mr. Harvey attended and successfully completed the Advanced Mud School.

36. During his employment, Mr. Harvey provided technical support for products in marketing, sales and customer support.

37. Mr. Harvey was an experienced supervisor with 36 years of sterling performance at two different companies.

38. Mr. Harvey was diagnosed with Rheumatoid and Psoriatic Arthritis in March of 2014.

39. Rheumatoid and Psoriatic Arthritis are autoimmune diseases causing chronic inflammation and deterioration of joints and causing damage to a variety of body systems.

40. As a result of his Rheumatoid and Psoriatic Arthritis, Mr. Harvey was required to undergo two surgeries on his feet while employed with Halliburton.

41. For each surgery, Mr. Harvey was required to request time off under the Family Medical Leave Act.

42. Mr. Harvey's supervisor, Alan Snyder, had actual knowledge of Mr. Harvey's health conditions.

43. Mr. Harvey was required to request time off from Mr. Snyder for his medical appointments and surgeries.

44. Mr. Harvey was able to perform his work with reasonable accommodations and using his normal sick leave and Family Medical Leave.

45. Mr. Harvey was prescribed Remicade Infusion treatments by his treating physician for his Rheumatoid and Psoriatic Arthritis.

46. Mr. Harvey discussed his diagnoses with his supervisor Alan Snyder.

47. Mr. Harvey and Mr. Snyder discussed that Amador Rodriquez, a Halliburton employee, was also prescribed Remicade Infusions to treat a related disease.

48. Mr. Harvey's medical insurance was provided by Halliburton.

49. Mr. Harvey's first Remicade treatment was on February 1, 2016.

50. Mr. Harvey's second Remicade treatment was on February 16, 2016.

51. Mr. Harvey's third Remicade treatment was on March 14, 2016.

52. These three treatments were part of the "load-up phase" for long term Remicade Infusion treatments.

53. The medical plan was to then move to infusion treatments once every 8 weeks.

54. On March 16, 2016, Mr. Harvey was fired by Halliburton along with Mike Bay and John Vanvalen.

55. Mr. Harvey, Mike Bay and John Vanvalen were all over the age of 60 at the time they were fired from Halliburton.

56. Mr. Harvey was fired 2 days following the "load-up" phase for his Remicade Infusion treatments.

57. Mr. Harvey was replaced by Dave Hayes, who was younger than Mr. Harvey.

58. Mr. Hayes was hired by Halliburton in 1997 to load bulk railroad cars.

59. Mr. Harvey hired Mr. Hayes in 1998 to fill a vacant position in the lab.

60. Mr. Hayes was placed in the position of Quality Systems Manager in 2011 at the Lovell Plant.

61. Mr. Harvey was BPM's Quality Assurance/Quality Control Manager with oversight responsibilities over Mr. Hayes.

62. Mr. Hayes was offered additional training at the direction of Mr. Snyder.

63. Mr. Harvey requested additional training, but his requests were denied.

64. Halliburton has alleged that it undertook to implement a reduction in force to respond to market conditions in the energy industry.

65. The BPM facility was successful outside the energy industry, producing many products in addition to drilling mud, which include: cat litter, Taconite for iron ore pelletizing, and material for products including geo-liners.

66. The BPM facility was insulated from the energy markets because of its large market in cat litter and other non-energy related products.

67. Halliburton's BPM facility fired three persons in 2016, all of whom were over the age of 60.

68. Terminated employee John Vanvalen was later rehired to his same position within a year.

69. Mike Bay was told his job was phased out, but Josh Tippetts performed the job for 6 months and was then given the title that belonged to Mr. Bay.

70. Halliburton has claimed that Mr. Harvey was terminated and that his position was filled by a younger employee named David Hayes who demonstrated a broader skill set than Mr. Harvey.

71. Mr. David Hayes did not have a broader set of skills than Mr. Harvey.

72. To the extent that Mr. Hayes had learned job functions not introduced to Mr. Harvey, those skills were learned through training not offered to Mr. Harvey.

73. Since the firings or claimed reduction-in-force of the three individuals in 2016, BPM has hired at least four new, additional employees all of whom are younger than 60 years of age.

74. After the claimed reduction-in-force, Halliburton advertised on May 26, 2016 for full time entry level positions at the BPM facility.

75. Plaintiff is informed, believes and therefore alleges that BPM hired four new employees within a year after terminating Mr. Harvey.

76. Halliburton refused to consider Mr. Harvey for rehire for new positions because of his age and disability.

77. Halliburton's claim that its BPM facility laid off Mr. Harvey pursuant to a reduction in force is a pretextual for terminating Mr. Harvey on account of his age and disability.

78. If in fact there was a legitimate need for a reduction in force, the Halliburton's BPM plant implemented the reduction in force in a discriminatory manner to eliminate Mr. Harvey and others over the age of 60.

79. Halliburton intentionally terminated Mr. Harvey because he was a high cost employee due to his medical condition related to his disability.

80. Mr. Harvey's Remicade Infusions were pre-approved prior to his termination.

81. As a result of his wrongful termination, Mr. Harvey was no longer able to receive Remicade Infusion treatments for his medical condition developed while employed with Halliburton.

82. The cost of each Remicade treatments is $13,646.

83. Mr. Harvey was financially unable to pay for Remicade treatments after being terminated by Halliburton.

84. Mr. Harvey's Rheumatoid and Psoriatic Arthritis has progressed more rapidly and with greater severity because he no longer had financial resources and the health insurance coverage he had earned over his 21 years of service with the BPM plant.

85. Mr. Harvey has been re-employed in a similar position where he continues to perform the same work with reasonable accommodations, but for less pay and reduced benefits.

86. Mr. Harvey has not been able to resume his doctor's ordered treatment for Remicade because his new employer's insurance does not provide that coverage and he cannot afford that treatment.

### FIRST CLAIM FOR RELIEF
(Age Discrimination in Violation of the Age Discrimination in Employment Act (ADEA) 29 U.S.C. § 621)

87. All prior allegations are incorporated herein by reference.

88. Defendant Halliburton's and its BPM facility's decision to terminated Mr. Harvey was the result of age based discrimination in violation of the ADEA.

89. Defendant Halliburton's and its BPM facility's motivating or determining factor in terminating Mr. Harvey was the result of age based discrimination in violation of the ADEA.

90. Even if downsizing was Halliburton's intention, the implementation of the reduction in force effort was conducted in a discriminatory manner in violation of the ADEA.

91. Halliburton's stated reasons for its conduct were not the true reasons, but instead were pretextual to hide the Defendant's discriminatory animus.

92. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the ADEA, Plaintiff has suffered and continues to suffer:

    a. Severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional and physical pain and suffering;

    b. Loss of medical benefits necessary to treat his condition developed while employed by by Halliburton;

    c. Physical impairment and worsening of his Rheumatoid and Psoriatic Arthritis; and

    d. Lost income and benefits.

93. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the ADEA, Mrs. Harvey has sustained and will continue to suffer a loss of consortium and other benefits in an amount that will be proven at the time of trial including a loss of loss of love, companionship, comfort, care, assistance, protection, affection, society, moral support, and the loss of the enjoyment of other relations and other incidents incumbent with the husband and wife relationship.

94. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the ADEA, Plaintiffs have suffered and continue to suffer damages in an amount to be proven at trial.

95. Defendant's unlawful conduct constitutes a knowing, malicious, willful and wanton violation of the ADA for which Plaintiff is entitled to an award of punitive damages.

**SECOND CLAIM FOR RELIEF**
**(Disability Discrimination in Violation of the Americans with Disabilities Act, 42 U.S.C. § 12101)**

96. All prior allegations are incorporated herein by reference.

97. Defendant Halliburton's and its BPM facility's decision to terminated Mr. Harvey was the result of his disability in violation of the ADA.

98. Defendant Halliburton's and its BPM facility's motivating or determining factor in terminating Mr. Harvey was the result of disability based discrimination in violation of the ADA.

99. Even if downsizing was Halliburton's intention, the implementation of the reduction if force effort was conducted in a discriminatory manner in violation of the ADA.

100. Mr. Harvey suffers from a disability that requires only a modest accommodation for the job he was employed to do, and which accommodation required no cost and infrequent time off for medical treatments.

101. Halliburton's stated reasons for firing Mr. Harvey are not the true reasons, but instead were pretextual to hide the Defendant's discriminatory animus.

102. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the ADA, Mr. Harvey has suffered and continues to suffer:

   a. Severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional and physical pain and suffering;

   b. Loss of medical benefits necessary to treat his condition developed while employed by Halliburton;

   c. Physical impairment and worsening of his Rheumatoid and Psoriatic Arthritis; and

   d. Lost income and benefits.

103.   As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the ADA, Mrs. Harvey has sustained and will continue to suffer a loss of consortium and other benefits in an amount that will be proven at the time of trial including a loss of loss of love, companionship, comfort, care, assistance, protection, affection, society, moral support, and the loss of the enjoyment of other relations and other incidents incumbent with the husband and wife relationship.

104.   As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the ADA, Plaintiffs have suffered and continues to suffer damages in an amount to be proven at trial.

105.   Defendant's unlawful conduct constitutes a knowing, malicious, willful and wanton violation of the ADA for which Plaintiffs are entitled to an award of punitive damages.

### THIRD CLAIM FOR RELIEF
### (Discrimination in Violation of the Wyoming Fair Employment Practices Act)

106.   All prior allegations are incorporated herein by reference.

107.   The Defendant's conduct as alleged above constitutes discrimination based on Mr. Harvey's disability in violation of the Wyoming Fair Employment Practices Act ("WFEPA").

108.   The Defendant's conduct as alleged above constitutes discrimination based on Mr. Harvey's age in violation of the WFEPA.

109.   Halliburton's stated reasons for firing Mr. Harvey, are not the true reasons, but instead were pretextual to hide the Defendant's discriminatory animus.

110.   As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the WFEPA, Mr. Harvey has suffered and continues to suffer:

    a. Severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional and physical pain and suffering;

    b. Loss of medical benefits necessary to treat his condition developed while employed by Halliburton;

    c. Physical impairment and worsening of his Rheumatoid and Psoriatic Arthritis; and

    d. Lost income and benefits.

111. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the WFEPA, Mrs. Harvey has sustained and will continue to suffer a loss of consortium and other benefits in an amount that will be proven at the time of trial including a loss of loss of love, companionship, comfort, care, assistance, protection, affection, society, moral support, and the loss of the enjoyment of other relations and other incidents incumbent with the husband and wife relationship.

112. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the WFEPA, Plaintiffs have suffered and continues to suffer damages in an amount to be proven at trial.

113. Defendant's unlawful conduct constitutes a knowing, malicious, willful and wanton violation of the WFEPA for which Plaintiffs are entitled to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray the Court grant the following relief:

1. Declaratory judgment and relief that the actions, conduct and practices of Defendant complained of herein violate the laws of the United States and the State of Wyoming;

2. An order directing Defendant to place Plaintiff in the position he would have occupied, together with full reinstatement of all benefits, salary consistent with raises awarded to other employees as well as vacation time and sick leave, but for Defendant's discriminatory treatment and otherwise unlawful conduct, as well as to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect his employment and personal life;

3. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all money and/or economic harm;

4. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to his professional and personal reputations and loss of career fulfillment;

5. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory harm, including but not limited to, compensation for his mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, emotional distress and physical injuries;

6. An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

7. An award of punitive damages;

8. An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

9. Such other and further relief as the Court may deem just and proper.

Dated this 20th day of December, 2018.

Philip A. Nicholas, # 5-1785
Meggan J. Nicholas, # 7-4856
Nicholas & Tangeman, LLC
P.O. Box 928
Laramie, Wyoming 82073
(307) 742-7140
Fax: (307) 742-7160
E-mail: nicholas@wyolegal.com
mnicholas@wyolegal.com

Thomas E. Lubnau, # 5-2218
P.O. Box 1028
Gillette, Wyoming 82717
(307) 682-1313
Fax: (307) 682-9340
tom@etseq.com

*Attorneys for Robert A. Harvey and Elaine Harvey*

*Complaint, Page 15 of 15 pages.*

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To: Robert A. Harvey<br>792 Garfield Avenue<br>Lovell, WY 82431 | From: Denver Field Office<br>303 East 17th Avenue<br>Suite 410<br>Denver, CO 80203 |

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 32K-2016-00089 | Philip Gross,<br>Supervisory Investigator | |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA): This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA must be filed in a federal or state court **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[ ] The EEOC is terminating its processing of this charge.

[X] The EEOC will continue to process this charge.

Age Discrimination in Employment Act (ADEA): You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court **WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[X] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Amy Burkholder,
Field Office Director

October 17, 2018
*(Date Mailed)*

Enclosures(s)

cc: Halliburton Energy Services; Philip A. Nicholas, Esq.


EXHIBIT A