Keith R. Nachbar
Keith R. Nachbar, P.C.
123 W. 1st Street, Suite 205
Casper, Wyoming 82601
Phone: (307) 473-8977
Fax: (307) 473-8989
Email: Keith@Nachbarlaw.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF WYOMING**

| | |
|---|---|
| ROBERT ALLEN HARVEY and ELAINE HARVEY, <br> Plaintiffs, <br><br> vs. <br><br> HALLIBURTON ENERGY SERVICES, INC., <br> Defendant. | Civil Action No. 19-cv-27 |

**MOTION TO COMPEL ARBITRATION AND DISMISS,
OR IN THE ALTERNATIVE, TO STAY THE PROCEEDINGS**

NOW COMES Defendant Halliburton Energy Services, Inc. ("Halliburton" or "Defendant") and submits this Motion to Compel Arbitration and Dismiss, or in the Alternative, to Stay the Proceedings. For the reasons set forth below and in the accompanying exhibits, Defendant's Motion should be granted and Plaintiffs' claims should be dismissed and compelled to final and binding arbitration.

## BACKGROUND

Plaintiff Robert Allen Harvey ("Harvey") began working for Halliburton in 1998/1999 through Halliburton's acquisition of his former employer. (*See* Complaint [Doc. 2] at ¶27.) Halliburton requires all its employees in the United States, as a term and condition of employment, to resolve disputes arising out of their employment through the company's Dispute Resolution Program ("DRP"). (*See* Declaration of Melinda Miner, attached hereto as **Exhibit A**, at ¶6; DRP, attached to Miner Decl. as **Exhibit A-1**.)

Halliburton first implemented the DRP in May 1993. (Id.) Soon after Harvey joined Halliburton, Halliburton notified its employees by mail of an update to the DRP and that the DRP was in place for all employees. (Miner Decl. at ¶8; 1999 Notice, attached to Miner Decl. as **Exhibit A-2**; Complaint at ¶27.) It additionally explained:

> Your decision to accept employment or *continue your current employment* after August 15, 1999 will mean that you have agreed to and are bound by the terms of this Program as contained in the Dispute Resolution Plan and Rules (enclosed).

(Id.) The mailing included a copy of the 1999 DRP as well as a brochure summarizing how the program works. (Miner Decl.; Ex. A-2.)

Thereafter, Halliburton periodically sent reminders about the DRP to its employees, including Harvey, along with updated versions of the DRP. (*See, e.g.,* 2009 Notice, attached to Miner Decl. as **Exhibit A-3**; 2011 Notice, attached to Miner Decl. as **Exhibit A-4**; 2012 Notice, attached to Miner Decl. as **Exhibit A-5**; 2015 Notice, attached to Miner Decl. as **Exhibit A-6**.) All of these notices, like the 1999 notice, provided that continued employment with Halliburton constituted acceptance of its DRP. (*See* Exhibits A-3 through A-5.) Each of these mail outs was sent to Harvey at his same home address that he subsequently included on a letter of his own to

Halliburton shortly after his layoff. (Miner Decl.; *See* DRP Mailout Records, attached to Miner Decl. as **Exhibit A-7**; 3/21/16 Letter, attached to Miner Decl. as **Exhibit A-8**.)

Harvey was terminated on March 16, 2016. (Complaint at ¶16.) Thereafter, Harvey filed this suit alleging age and disability discrimination. (Complaint.) Mrs. Harvey has joined in the suit but asserts only loss of consortium claims that are wholly derivative of Harvey's discrimination claims. (Complaint at ¶¶93, 103, 111) (the consortium claims are based on the identical facts as Harvey's employment-related claims). Halliburton now moves to dismiss Harvey's claim because Harvey agreed to arbitrate any and all claims arising out of the employment relationship pursuant to Halliburton's DRP. Both Harvey's and Mrs. Harvey's claims are within the scope of this agreement. Thus, this matter must be compelled to arbitration.

## SCOPE OF THE ARBITRATION AGREEMENT

As explained above, Harvey agreed to arbitrate any employment-related dispute by continuing his employment with Halliburton after it notified him of the DRP in 1999. Likewise, Harvey accepted revised versions of the DRP by continuing his employment until his termination in 2016.

Halliburton's DRP covers all disputes "between the Company and the Company's present and former Employees and Applicants for employment, including those related to or arising out of a current, former, or potential employment relationship with the Company." (DRP at p. 1.) Furthermore, the DRP constitutes the *exclusive* means for current or former Halliburton employees to resolve workplace disputes. (Id.) The DRP specifically states: "All Disputes not otherwise settled by the Parties ***shall be finally and conclusively resolved through arbitration under this Plan and the Rules, instead of through trial before a court.***" (Id. at p. 5) (emphasis added). Thus,

3

any and all disputes arising out of Harvey's employment with Halliburton are subject to final and binding resolution via the DRP and arbitration.

The DRP also encompasses disputes between "a person or entity otherwise entitled to [the Plan's] benefits." (DRP at p. 2.) Therefore, by its express terms the DRP is intended to cover claims asserted by non-employees -- who are, effectively, third party beneficiaries of the DRP -- who assert claims relating to matters within the scope of the DRP. (Id.) Mrs. Harvey's claims are wholly derivative of matters within the scope of the DRP.

## ARGUMENT

### I. Federal Policy Strongly Favors Enforcement of Arbitration Agreements.[1]

The Federal Arbitration Act's ("FAA") primary purpose is to "enforce private agreements into which parties [have] entered." Mitsubishi Corp. v. Soler Chrysler-Plymouth, 473 U.S. 614, 625-26 (1985) (citing Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985)). In enacting the FAA, Congress declared a "liberal federal policy favoring arbitration agreements." Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24 (1983); *see also* Equal Employment Opportunity Comm'n v. Waffle House, Inc., 534 U.S. 279, 289 (2002); Stewart Title Guaranty Co. v. Tilden, 64 P.3d 739 (Wyo. 2003). To that end, the FAA requires courts "'rigorously' to 'enforce arbitration agreements according to their terms.'" Epic Sys. Corp. v. Lewis, 138 S. Ct. 1612, 1621 (2018) (*quoting* American Express Co. v. Italian Colors Restaurant, 570 U.S. 228, 233 (2013)).

---

[1] Defendant's Motion is governed by the Federal Arbitration Act, 9 U.S.C. §1 *et. seq. See* BOSC, Inc. v. Bd. of Cty. Commissioners of Cty. of Bernalillo, 853 F.3d 1165, 1176–77 (10th Cir. 2017).

4

Furthermore, the FAA mandates that any doubts as to the arbitrability of issues be resolved in favor of arbitration. Greentree Fin. Corp. v. Bazzle, 123 S. Ct. 2402, 2407 (2003). As the Supreme Court has stated:

> [Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration ... The [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

Moses H. Cone Mem. Hosp., 460 U.S. at 24-25. Thus, arbitration agreements are favored and should be enforced. *See also* Hill v. Ricoh Americas Corp., 603 F.3d 766, 771 (10th Cir. 2010) ("The FAA is a 'congressional declaration of a liberal federal policy favoring arbitration agreements.'") (internal citation omitted); Cummings v. Fedex Ground Package Sys., 404 F.3d 1258, 1262 (10th Cir. 2005); Jourdan Family Ltd. P'ship v. Wells Fargo Bank, No. 11-273, 2011 WL 13112243, at *2 (D. Wyo. Oct. 13, 2011).

## II. The Parties' Agreement to Arbitrate Is Valid and Enforceable.

Under the FAA, arbitration agreements are enforceable when they are (1) written; (2) part of a contract or transaction involving interstate commerce; and (3) valid under general principles of contract law. 9 U.S.C. §2; Nesbitt v. FNCH, Inc., 811 F.3d 371, 376 (10th Cir. 2016); Kindred Healthcare Operating, Inc. v. Boyd, 403 P.3d 1014, 1018 (Wyo. 2017). The Halliburton DRP satisfies all three requirements.

### A. *The Arbitration Agreement Is in Writing.*

The arbitration provision in the DRP and other related documentation described *supra* constitute the requisite "writing" under the FAA. As the Tenth Circuit has noted, the FAA requires only that arbitration agreements be in writing, *not* that the writing be signed by the parties to be

5

bound. *See* Bellman v. i3Carbon, LLC, 563 F. App'x 608, 614 (10th Cir. 2014) ("Defendants correctly note that while the FAA requires a writing evidencing an agreement to arbitrate disputes, it is well-established that the FAA does not require signatures of the parties to be enforced.") (internal quotation marks omitted); Med. Dev. Corp. v. Indus. Molding Corp., 479 F.2d 345, 348 (10th Cir. 1973); Howard v. Ferrellgas Partners, L.P., 92 F. Supp. 3d 1115, 1131 (D. Kan. 2015) ("The FAA does not require arbitration agreements to be signed; rather, as is indicated in § 2, they need only to be in writing.").

Thus, if Harvey submits that he "never signed anything" and thus never agreed to arbitrate, his assertion must be rejected. The DRP is clearly in writing, which is all that is required under the FAA, and numerous courts have held that an arbitration agreement need not be signed to be enforceable. Accordingly, Halliburton has established the FAA's writing requirement.

### 2. *The Employment Relationship with Halliburton Involved Interstate Commerce.*

The term "involving commerce" is very broad and reaches to the full extent of Congress' power under the commerce clause. Allied/Bruce Terminix Co. v. Dobson, 513 U.S. 265, 274-75 (1995). As a multi-national corporation, Halliburton provides a full range of products, services, and integrated solutions for oil and gas exploration, development, and production. (See Miner Decl. at ¶ 3.) Halliburton operates facilities in every state and numerous countries, serving people from inside and outside Wyoming, utilizing interstate mail and travel systems, and recruiting and advertising outside Wyoming. (Id. at ¶ 4.) As a result, Halliburton's employees have a far-flung network of company resources which they can and do access across state and country lines. (Id. at ¶ 5.)

Since the Supreme Court clarified the scope of the exemption in Section 1(c) of the FAA, no dispute exists that the FAA applies to all interstate employment agreements, with the exception of transportation workers. *See* Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 274 (1995) (holding that the FAA applies to all employment agreements involving or affecting commerce). Because Halliburton is engaged in interstate commerce, Plaintiff's agreement to arbitrate, as incorporated into his employment relationship, easily falls within Congress's broad power over commerce. *See* Circuit City Stores v. Adams, 532 U.S. 105 (2001). Accordingly, the interstate commerce requirement has been met.

### 3.  *The DRP Satisfies Wyoming Contract Requirements.*

The requirements of contract law in Wyoming are offer, acceptance, and consideration. *See* McCormick v. McCormick, 926 FP.2d 360, 362 (Wyo. 1996). Each of these requirements has been met. First, Halliburton's numerous notices regarding the DRP informed Harvey that its offer of continued employment was contingent upon his acceptance of the DRP. For example, the DRP notice sent out in December 2012 stated:

> As a reminder, each employee of any Halliburton company in the U.S., or whose employment is subject to U.S. laws, has agreed (along with the Company itself) that all disputes will be resolved utilizing the DRP. **This is a condition of your employment, and by continuing (or accepting) employment upon receipt of this notification, you are renewing your agreement to be bound by the DRP.**

(Ex. A-5) (emphasis in original). Halliburton sent this notice, as well as numerous other notices about the DRP, to Harvey. (*See* Exs. A-2 through A-7.) Thus, by continuing his employment, Harvey expressed his assent to be bound by the DRP. Hardin v. First Cash Fin. Servs., Inc., 465 F.3d 470, 477-78 (10th Cir. 2006) ("We, therefore, construe [employee]'s continued employment after [notice of DRP] as acceptance of the terms of the DRP.")

7

Second, Plaintiff's continued employment also constituted the requisite consideration, as did the parties' mutual promises to arbitrate. Kindred v. Healthcare Operating, Inc. v. Boyd, 403 P.3d 1014 (Wyo. 2017) (*citing* Carroll v. Bergen, 57 P.3d 1209, 1214 (Wyo. 2002) ("Valuable consideration ... may consist of an exchange of mutual promises, which promises impose a legal liability upon each promisor.") and Schlesinger v. Woodcock, 35 P.3d 1232, 1237 (Wyo. 2001)). *See also* Preston v. Marathon Oil Co., 277 P.3d 81, 85-88 (Wyo. 2012) (holding continued employment was sufficient consideration to support an agreement to assign intellectual property). Accordingly, as the DRP requires both parties to relinquish their jury rights and Harvey continued his employment, the arbitration agreement was supported by adequate consideration.

Therefore, the parties' arbitration agreement is valid under general Wyoming contract principles, much as it has been deemed valid and applicable in numerous other jurisdictions.[2]

### III.     Plaintiff's Claim Is within the Scope of the Arbitration Provisions.

By its plain language, the Halliburton DRP provides the exclusive and mandatory method by which ***all*** workplace disputes arising out of an employment relationship are resolved. (DRP at p. 1.) Furthermore, the DRP expressly applies to "allegations of discrimination based on ... age ... or disability." (Id. at p. 2.) Therefore, Harvey's age and disability discrimination claims are indisputably within the scope of the agreement, and the Court should compel the claim to arbitration.

Mrs. Harvey's loss of consortium claims also fall within the scope of the DRP because the DRP is a broad arbitration agreement and the claims are inextricably intertwined with Harvey's claims. Furthermore, it is well established that in Wyoming, Mrs. Harvey's claim for loss of

---

[2] *See e.g.*, Cooksey v. Halliburton Energy Servs., Inc., No. 17-832 (D. Colo. April 17, 2018) (Doc. No. 43).

8

consortium is derivative of Harvey's claim.[3] *See, e.g.,* Worman v. Carver, 44 P.3d 82, 89 (Wyo. 2002) (*citing* Massengill v. S.M.A.R.T. Sports Med. Clinic, P.C., 996 P.2d 1132, 1137 (Wyo. 2000) and Verschoor v. Mountain West Farm Bureau Mut. Ins. Co., 907 P.2d 1293, 1301 (Wyo. 1995)); Lesh v. Allstate Ins. Co., 723 F.Supp.2d 624, 629 (D. Wyo. 1989).

The Tenth Circuit reviews the arbitrability of collateral matters based upon a three-part inquiry which turns on whether the arbitration agreement is broad or narrow. Cummings v. Fedex Ground Package Sys., Inc., 404 F.3d 1258, 1262 (10th Cir. 2005). Where the arbitration agreement is broad, as here, "'there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it.'" Id. (citations omitted). *See also* Brown v. Coleman Co., 220 F.3d 1180, 1184 (10th Cir. 2000); P&P Industries, Inc. v. Sutter Corp., 179 F.3d 861, 781 (10th Cir. 1999). As such, Mrs. Harvey's claims are arbitrable.[4] *See, e.g.,* Georgia Power Co. v. Partin, 727 So.2d 2 (Ala. 1998) (holding spouse's loss of consortium claim arbitrable because spouse's interest in litigation was only in privity to her husband's employment-related claims); Rushe v. NMTC, Inc., No. 01-3440, 2002 WL 575706 (E.D. La. Apr. 16, 2002) (holding that loss of consortium claim is subject to arbitration where the agreement contains a "broad" arbitration clause).

---

[3] Indeed, the right to bring an action under the Civil Rights Act is personal and does not accrue to a relative. Dohaish v. Tooley, 670 F.2d 934 (10th Cir. 1982); Trujillo v. Board of County Commissioners, 768 F.2d 1186, 1187 (10th Cir. 1985); Coon v. Ledbetter, 780 F.2d 1158, 1160-61 (5th Cir. 1986). *See also* Barker v. Halliburton Co., 645 F.3d 297 (5th Cir. 2011).

[4] The Tenth Circuit previously reviewed the arbitrability of a loss of consortium claim under the Halliburton DRP in McCauley v. Halliburton Energy Servs., Inc., 161 Fed. Appx. 760 (10th Cir. 2005), and held that the DRP did not cover the consortium claim. Critically, however, in McCauley, the consortium claim was not covered because it was derivative of the plaintiff's negligence claim *as an independent contractor*, not as an employee. Id. at 766. There is no independent contractor claim here; Mrs. Harvey's claims are directly derivative of Harvey's clearly covered employee discrimination claims. Accordingly, as Mrs. Harvey's claims are grounded in Harvey's status as an employee of Halliburton, her claims fall within the scope of the DRP. Id. at 766-67.

9

Moreover, Mrs. Harvey should be treated as a third party beneficiary to the DRP under equitable estoppel principles. As described in the Complaint, Mrs. Harvey's loss of consortium claims are based entirely upon Harvey's employment relationship with KBR — an employment relationship containing as a condition of employment a mandatory and binding arbitration agreement. Thus, Mrs. Harvey's claim depends entirely on the employment relationship between Harvey and KBR. She cannot base her claims on the agreement between her husband and Halliburton, and at the same time seek to avoid it. Therefore, Mrs. Harvey should be equitably estopped from pursuing claims entirely dependent on Harvey's employment relationship with KBR while at the same time avoiding the DRP, a material condition of Harvey's employment with KBR. Accordingly, her claims should be compelled to arbitration along with her husband's claims.

There is no question that Plaintiffs' claims in their entirety fall within the scope of the Program.

**IV.   This Matter Should Be Dismissed or, In the Alternative, Stayed.**

The Court should dismiss this matter and compel the Harveys to arbitrate their claims. As this Court has noted, "[d]espite the seemingly mandatory language of section 3 of the FAA in this regard, the majority of federal courts hold that a case may be dismissed, rather than stayed, when all claims therein are arbitrable." Am. Family Mut. Ins. Co. v. Tamko Bldg. Prod., Inc., 178 F.Supp.3d 1121, 1129 (D. Colo. 2016) (listing cases). "Although the Tenth Circuit has not addressed this issue directly, it has intimated that a district court may dismiss when all claims are arbitrable and the movant specifically requests dismissal rather than a stay." Id. Here, Harvey's only claims are arbitrable, and Halliburton has moved for dismissal. Accordingly, this matter

should be dismissed.[5] In the alternative, Mrs. Harvey's claims are derivative of her husband's and they should be stayed pending the arbitration of her husband's employment-related claims.

## CONCLUSION

This Court should compel Plaintiffs to dismiss their claims with prejudice and to arbitrate. The Halliburton DRP contains a valid and enforceable arbitration requirement to which Harvey agreed and is bound. Harvey's claims, and his wife's derivative claims, are clearly within the scope of the DRP. Accordingly, Defendant respectfully requests that the Court grant its Motion to Compel Arbitration and Dismiss, or in the Alternative, to Stay the Proceedings.

Respectfully submitted this 12 day of February 2019.

*/s/ Keith R. Nachbar*

Keith R. Nachbar
Keith R. Nachbar, P.C.
123 W. 1st Street, Suite 205
Casper, Wyoming 82601
Phone: (307) 473-8977
Fax: (307) 473-8989
Email: Keith@Nachbarlaw.com

**COUNSEL FOR DEFENDANT,
HALLIBURTON ENERGY SERVICES, INC.**

---

[5] Alternatively, Defendant requests that the matter be stayed pending arbitration in the event that the Court wishes to retain jurisdiction over the matter.

11

## CERTIFICATE OF CONFERENCE

Defendant's counsel conferred and corresponded with counsel for the Plaintiff as to the relief requested by this Motion on January 22 and February 2, 2019, but the parties were unable to agree on a resolution of the issues raised herein.

*/s/ Rachel E. Linzy*

## CERTIFICATE OF SERVICE

I hereby certify that on this 12 day of February, 2019, I caused to be served by United States mail and electronic mail the foregoing pleading upon counsel of record as follows:

> Philip A. Nicholas
> Meggan J. Nicholas
> Nicholas & Tangeman, LLC
> P.O. Box 928
> Laramie, Wyoming 82073
> nicholas@wyolegal.com
> mnicholas@wyolegal.com
>
> Thomas E. Lubnau
> Lubnau Law Office, PC
> P.O. Box 1028
> Gillette, Wyoming 82717
> tom@esteq.com

*/s/ Keith Nachbar*