Keith R. Nachbar
Keith R. Nachbar, P.C.
123 W. 1st Street, Suite 205
Casper, Wyoming 82601
Phone: (307) 473-8977
Email: Keith@Nachbarlaw.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF WYOMING**

| | |
|---|---|
| ROBERT ALLEN HARVEY and ELAINE HARVEY,<br>          Plaintiffs,<br><br>vs.<br><br>HALLIBURTON ENERGY SERVICES, INC.,<br>          Defendant. | Civil Action No. 19-cv-27 |

**REPLY IN SUPPORT OF MOTION TO COMPEL**

Defendant Halliburton Energy Services, Inc. respectfully submits that Plaintiffs' Opposition [Doc. 13] fails to dispute that Plaintiffs' claims are subject to Halliburton's DRP and should be compelled to arbitration.

**I.      The Parties' Agreement to Arbitrate Is a Valid and Enforceable Contract.**

Each of the requisite of a contract – offer, acceptance and consideration – were met here. *McCormick v. McCormick*, 926 FP.2d 360, 362 (Wyo. 1996).

**        A.      Halliburton Made an Offer to Mr. Harvey.**

Significantly, Plaintiffs cannot dispute that the offer element was met because ***Mr. Harvey admits that he received at least* one communication regarding the Halliburton Dispute**

1

***Resolution Plan ("DRP")***, and tellingly, does not dispute that he received the remainder**.** (Harvey Decl. [Doc. 12] at ¶¶45-46.)  Indeed, Mr. Harvey does not dispute that:

- Halliburton provided numerous notices regarding the DRP to all employees via U.S. Mail;
- Mr. Harvey was employed during each of the identified periods;
- the addresses listed as Mr. Harvey's residences at which he received mail were correct; or
- Mr. Harvey lived and received mail at each of the addresses identified during the relevant respective time periods, including at least one DRP notice.

Mr. Harvey ***does not*** dispute that he received the other multiple mailings; rather, he simply has "no recollection" of receiving or reading such documents. (Plaintiffs' Opp. at 5.) That is patently insufficient.  Mr. Harvey's disregard of repeated communication from his employer does not relieve him of his obligation to arbitrate. *See, e.g., Fleig v. Estate of Fleig by & through Fleig*, 413 P.3d 638, 642 (Wyo. 2018) (failure to read agreement does not render it void or nonbinding).[1] As shown by the undisputed evidence, Halliburton's continued offer of employment was made each time a notice was sent to its employees, ***including Mr. Harvey.***

**B.    Modifying Mr. Harvey's At Will Employment Did Not Vitiate Consideration.**

Plaintiffs rely on two erroneous presumptions: first, that Halliburton could not amend Mr. Harvey's at will employment status; and second, that continued employment was not sufficient consideration for the modification of his employment status.  Both premises are incorrect.

As the Wyoming Supreme Court has ***very clearly*** explained, "[b]y its nature … an at-will employment relationship ***is subject to modification at any moment by either party as a***

---

[1]  *See also Vernon v. Qwest Commc'ns Int'l, Inc.*, 857 F.Supp.2d 1135 1152 (D. Colo. 2012); *Weller v. HSBC Mortg. Servs., Inc.*, 971 F.Supp.2d 1072, 1080 (D. Colo. 2013) (party's inability to remember seeing or being provided with a copy of arbitration agreement insufficient to avoid arbitration).

2

*condition of it continuing at all*." *Preston v. Marathon Oil Co.,* 277 P.3d 81, 85 (Wyo. 2012) (emphasis added, internal quotations omitted).  Further, a change may be made to at will employment status *without further consideration*. *Id.* at 87.  The Court explained that "[b]ecause of its terminable nature, either party has the power to modify the terms of the employment at any time, and the other party may either accept the new terms and carry on with the employment relationship or reject the new terms and terminate the relationship." *Id.*  Thus, if Mr. Harvey did not agree to modifications to the employment agreement, he was free to end his employment.[2]  He did not.

Plaintiffs argue that Halliburton could not unilaterally modify the at will agreement, relying on *Brodie v. Gen. Chem Corp.*, 934 P.2d 1263, 1268 (Wyo. 1997), yet *Brodie* is inapposite because the question was *not* whether the employer could unilaterally modify an *at-will* employment agreement (as here).  Instead, Brodie was employed pursuant to a handbook which undisputedly created an implied contract of "permanent" employment that could not be terminated without cause. *Id.*  The *Brodie* court had to determine whether the employer could unilaterally revoke the employee handbook and *restore* at will status.  That is an entirely different question, as it significantly modified the employees' rights under their existing contract.  This is *not* the case here, where the agreement is admittedly already at will. (*See* Plaintiffs' Opp. at 1, 2, 7, etc.)  In other words, Mr. Harvey was not deprived of any contractual right to

---

[2] Plaintiffs argue that *Preston* and *Kindred Healthcare Operating, Inc. v. Boyd*, 2017 WY 122 (2017) do not apply because in each of those, the plaintiff had signed an agreement; that fact is irrelevant, however, as the manifestation of assent was not at issue in either case. Rather, the issue in both was whether the contract was valid because no additional consideration was provided.  The fact that Preston or Boyd signed a contract is of no moment – indeed, it is well established that the FAA requires only a writing but does not require a signature (a fact that Plaintiffs do not seriously dispute). (*See* Motion to Compel Arbitration [Doc. 7], Section II(A).)

continued employment by implementation of the arbitration agreement.

Plaintiffs also point to *Hopper v. All Pet Animal Clinic*, 861 P.2d 531, 541 (Wyo. 1993) arguing that separate consideration is required for a valid agreement to arbitrate. *Hopper*, too, is inapplicable because it analyzed whether additional consideration was required when a covenant not to compete was imposed. The court explained that such a covenant represented a restraint on the ability of an employee to earn a living post-employment. *Id.* Unlike a reciprocal agreement by both parties as here, the *Hopper* non-compete unilaterally restricted the employee's actions without detriment to the employer, making *Hopper* irrelevant to the current analysis. In contrast, the agreement at issue here mutually waives the right to have disputes heard in court by both parties, and expressly preserves all substantive legal rights and remedies. (DRP Section 8(b)).

### C. Mr. Harvey's Continued Employment Was Objective Evidence of Assent.

Plaintiffs rely on *Fox v. Tanner*, 101 P.3d 939, 944 (Wyo. 2004), for the premise that the parties must have given "clear and unmistakable" evidence of assent. Here, the notice of the modification to Mr. Harvey's employment ***undisputedly stated*** that continued employment manifested acceptance of the DRP. Because Mr. Harvey continued his employment following receipt of the notice(s), he objectively manifested intent to accept Halliburton's offer.

As the Wyoming Supreme Court has held, a court examines "the objective manifestations of the parties' contractual intent to determine whether a contract was formed." *Dobson v. Portrait Homes, Inc.,* 117 P.3d 1200, 1205 (Wyo. 2005) *citing McDonald v. Mobil Coal Producing, Inc.,* 820 P.2d 986, 990 (Wyo.1991). "Under the 'objective theory' of contract formation, contractual obligation is imposed not on the basis of the subjective intent of the parties, but rather upon the

outward manifestations of a party's assent sufficient to create reasonable reliance by the other party." *Id.* Here, there is no dispute that Mr. Harvey was mailed and received multiple notices of the DRP, which expressly stated that continued employment following notice would constitute his intent to be bound by the agreement. Mr. Harvey's actions continuing his employment, therefore, outwardly manifested his assent to the agreement. To the extent he claims he did not know or subjectively intend to agree, his outward objective manifestation will still result in the formation of a contract, and may only be voidable (not void) in the presence of fraud, duress, mistake, etc. *Id.* Mr. Harvey has argued none of these. Further, Mr. Harvey's disregard of the notices received from his employer do not constitute grounds to void a contract. *Fleig*, 413 P.3d at 642.[3] Thus, Mr. Harvey assented to the agreement by his outward objective conduct.

## II. Mrs. Harvey's Derivative Claims Are Arbitrable.

Plaintiffs do not dispute that Mrs. Harvey's claims cannot exist independently. Instead, they argue that Mrs. Harvey was not a party to the arbitration contract. In support, Plaintiffs cite *McCauley v. Halliburton Energy Svcs.,* 161 Fed. Appx. 760 (10th Cir. 2005), arguing that a derivative consortium claim was not subject to Halliburton's DRP because the family making the claim was not a party to the contract. Plaintiffs are correct; and it is for that same reason that *McCauley* does not apply as noted in Halliburton's Motion. (Motion at fn 10.) McCauley held two roles; that of employee and that of independent contractor based on a side business in which

---

[3] There is no dispute that Mr. Harvey received the DRP notices and had ample opportunity to read it, given that a notice from *2012* has admittedly been sitting in his storage cabinet for nigh on seven years. The failure to read that contract does not excuse him from his obligations under that contract. *See Ohio Cas. Ins. Co. v. W.N. McMurry Const. Co.,* 230 P.3d 312, 325 (Wyo. 2010) (rejecting Plaintiff's argument that its duty to read insurance policy was not mitigated where policy was undisputedly delivered and party had "ample opportunity to read the policy.").

he provided separate services for Halliburton. *Id.*   McCauley was injured while performing tasks pursuant to his independent contractor status, and filed a negligence claim in that context, and the derivative consortium claim grew out of that – *not* his employment relationship.  Thus, neither McCauley's business entity nor his family were parties to the arbitration agreement.  That is ***not*** the case here, where Mr. Harvey's claims grew directly out of his employment relationship and his wife's claims are completely reliant on such claims.  Thus, Mrs. Harvey's derivative claims should be compelled to arbitration as well, as they cannot survive independently.

WHEREFORE, Defendant prays that the Court grant Defendant's Motion and compel this matter to arbitration.

**DATED** this 12th day of March, 2019.

         */s/ Keith R. Nachbar*
Keith R. Nachbar
Bar No.6-2808
Keith R. Nachbar, P.C.
123 W. 1st Street, Suite 205
Casper, Wyoming 82601
Phone:  (307) 473-8977
Fax:  (307) 473-8989
Email: Keith@Nachbarlaw.com

**COUNSEL FOR DEFENDANT,
HALLIBURTON ENERGY SERVICES,
INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of March, 2019, the foregoing Reply has been served via the Court's electronic filing system upon counsel of record as follows:

>Philip A. Nicholas
>Meggan J. Nicholas
>Nicholas & Tangeman, LLC
>P.O. Box 928
>Laramie, Wyoming 82073
>nicholas@wyolegal.com
>mnicholas@wyolegal.com
>
>Thomas E. Lubnau
>Lubnau Law Office, PC
>P.O. Box 1028
>Gillette, Wyoming 82717
>tom@esteq.com

>*/s/ Keith R. Nachbar*