

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

---

ROBERT ALLEN HARVEY and
ELAINE HARVEY,

      Plaintiffs,

vs.

HALLIBURTON ENERGY SERVICES, INC.,

      Defendant.

Case No. 1:19-CV-0027-SWS

---

### ORDER GRANTING MOTION TO COMPEL ARBITRATION AND STAYING PROCEEDINGS

This matter comes before the Court on Defendant's *Motion to Compel Arbitration and Dismiss, or in the Alternative, to Stay the Proceedings* (ECF No. 7). The Court, having considered the briefs and materials submitted in support of the motion and Plaintiffs' opposition thereto, and being otherwise fully advised, FINDS and ORDERS as follows:

#### BACKGROUND

Plaintiffs filed this action on February 5, 2019, alleging three claims for relief against Defendant arising from the termination of Plaintiff Robert Harvey's employment: (1) age discrimination; (2) disability discrimination; and (3) discrimination in violation of the Wyoming Fair Employment Practices Act. (*See* Compl., ECF No. 2.) Plaintiff Elaine Harvey also alleges loss of consortium as a result of Defendant's allegedly discriminatory conduct. *Id.* ¶¶ 93, 103 & 111. Mr. Harvey began working for Defendant Halliburton in

1998/1999 when Halliburton acquired the bentonite mining and production facility in Lovell, Wyoming at which Mr. Harvey was already working. *Id.* ¶¶ 6, 26-27. Following the acquisition, Mr. Harvey continued to serve as the Quality Assurance/Quality Control Supervisor at the facility. *Id.* ¶ 28.

In March of 2014, Mr. Harvey was diagnosed with Rheumatoid and Psoriatic Arthritis, requiring him to take time off work for medical appointments and two surgeries. *Id.* ¶¶ 38-43. He was ultimately prescribed Remicade Infusion treatments for his condition, which he began receiving in February of 2016: the first treatment on February 1, 2016; the second treatment on February 16, 2016; and the third treatment on March 14, 2016. *Id.* ¶¶ 45, 49-51. These three treatments were part of the "load-up phase" for long-term Remicade Infusion treatments. *Id.* ¶ 52. Halliburton terminated Mr. Harvey's employment on March 16, 2016. *Id.* ¶ 54. Mr. Harvey was 61 years of age at the time. *Id.* ¶ 17.

In 1993, Halliburton implemented a Dispute Resolution Program ("DRP"), requiring all its employees in the United States, as a term and condition of employment, to resolve disputes arising out of their employment through arbitration under the program instead of through the court system. (*See* Miner Decl. ¶ 6, ECF No. 7-2; Miner Decl. Ex. A-1 at 7, ECF No. 703.) Thereafter, Halliburton periodically sent reminders about the DRP to its employees along with updated versions of the DRP. *Id.* ¶ 7. Soon after Mr. Harvey became employed by Halliburton, the company notified its employees by mail of an update to the DRP and that the DRP was "in place for all employees." *Id.* ¶ 8 & Ex. A-2 (1999 DRP Notice). The notice additionally stated: "Your decision to accept employment *or continue your current employment after August 15, 1999* will mean that you have agreed

to and are bound by the terms of this Program as contained in the Dispute Resolution Plan and Rules (enclosed)." (Miner Decl. Ex. A-2 at 2, ECF No. 7-4) (emphasis added). The mailing included a copy of the 1999 DRP as well as a brochure summarizing how the program works. *Id.*

Halliburton mailed similar notices and updated versions of the DRP again in 2009, 2011, 2012, and 2015. (Miner Decl. ¶ 7.) All the subsequent notices, like the 1999 notice, provided that continued employment with Halliburton constituted acceptance of its DRP. (*See* Miner Decl. Exs. A-3 through A-5 ("This is a condition of your employment, and by continuing (or accepting) employment upon receipt of this notification, you are renewing your agreement to be bound by the DRP."); Ex. A-6 at 3 ("By accepting employment with Halliburton, you agree to resolve all work-related disputes with your employer by arbitration under the Halliburton [DRP].").) Each of the mailings was sent to Mr. Harvey at his same home address that he identified on a letter of his own to Halliburton shortly after his termination. (Miner Decl. ¶¶ 8-9.)

In its present motion, Defendant argues Mr. Harvey agreed to arbitrate any and all claims arising out of the employment relationship pursuant to Halliburton's DRP. Defendant further argues Mrs. Harvey's loss of consortium claims are likewise within the scope of the DRP. Thus, Defendant contends, this matter must be compelled to arbitration and dismissed or, in the alternative, stayed. Plaintiff argues Defendant's motion should be denied because there is no valid agreement to arbitrate between the parties.

## DISCUSSION

Generally, courts apply ordinary state-law principles governing the formation of contracts to determine whether a party has agreed to arbitrate a dispute. *See Hardin v. First Cash Financial Servs., Inc.*, 465 F.3d 470, 475 (10th Cir. 2006); *Kindred Healthcare Operating, Inc. v. Boyd*, 403 P.3d 1014, 1018 (Wyo. 2017) ("when deciding whether an arbitration agreement is enforceable, courts apply state law principles governing the formation of contracts"). For a contract to be valid, there must be an offer and acceptance along with valuable consideration. *Kindred Healthcare*, 403 P.3d at 1024. "Mutual assent between contracting parties is necessary for the formation of a contract." *Id*. Valuable consideration in this context may consist of "an exchange of mutual promises, which promises impose a legal liability upon each promisor." *Id.* at 1024-25. "Consideration may take a variety of forms including the performance of some act, a forbearance, or the creation, modification, or destruction of a legal relationship." *Id*. at 1025. In *Kindred Healthcare*, the Wyoming Supreme Court held an agreement to arbitrate was supported by sufficient consideration because the parties "exchanged mutual promises to forbear their right to resolve disputes in court and create a new legal relationship requiring them to utilize the ADR process." *Id.*

A.   *Mutual Assent*

Plaintiffs contend there was no mutual assent in this case. First, Plaintiffs argue the unsolicited materials mailed by Halliburton to Mr. Harvey "did not invite any action by Mr. Harvey." (Pl.'s Br. in Opp'n at 12, ECF No. 13.) The Court disagrees. "An offer is 'the manifestation of willingness to enter into a bargain, so made as to justify another

4

person in understanding that his assent to that bargain is invited and will conclude it.'" *Phoenix Vintners, LLC v. Noble,* 423 P.3d 309, 317 (Wyo. 2018) (quoting Restatement (Second) of Contracts § 24 (1981)). The plain language of both the 1999 DRP Notice mailed to Mr. Harvey shortly after he began his employment with Halliburton and the 2012 DRP Notice which Mr. Harvey acknowledges having received invited Mr. Harvey to agree to the terms of the DRP by continuing his employment with Halliburton.

Plaintiffs also argue there is no indication Mr. Harvey accepted the DRP because he did not, nor was he asked to, sign any documents and he did not, nor was he asked to, read the DRP material. The Federal Arbitration Act ("FAA") requires only that arbitration agreements be in writing, not that the writing be signed by the parties to be enforceable. *See Bellman v. i3Carbon, LLC*, 563 F. App'x 608, 614 (10th Cir. 2014) ("Defendants correctly noted that while the FAA requires a writing evidencing an agreement to arbitrate disputes, it is well-established that the FAA does not require signatures of the parties to be enforceable"). Nor does Wyoming law require a written agreement to arbitrate be signed. *See* WYO. STAT. § 1-36-103; *Hot Springs Cnty. Sch. Dist. No. 1 v. Strube Constr. Co.*, 715 P.2d 540, 545 (Wyo. 1986) ("An agreement to arbitrate need not be written and can arise as the result of the conduct of parties to an existing dispute regardless of whether or not they have previously contracted for arbitration.").

Moreover, the following advisement appeared at the top of the 2012 DRP Notice: "**PLEASE READ THIS LETTER AND THE ENCLOSED DOCUMENTS. THESE ARE LEGAL DOCUMENTS THAT CONTAIN IMPORTANT INFORMATION CONCERNING YOUR RIGHTS AND OBLIGATIONS AS AN EMPLOYEE.**"

(Miner Decl. Ex. A-5, ECF No. 7-7 at 1) (emphasis in original). Mr. Harvey does not dispute that he received the multiple DRP mailings; rather, he simply has no recollection of receiving or reading such documents. However, "[a] party generally cannot avoid contractual obligations by claiming that he or she did not read the agreement." *Weller v. HSBC Mortg. Servs., Inc.*, 971 F. Supp. 2d 1072, 1080 (D. Colo. 2013) (internal quotation marks and citation omitted). *See also Fleig v. Estate of Fleig*, 413 P.3d 638, 642 (Wyo. 2018) (failure to read agreement does not render it void or non-binding); *Bear v. Volunteers of Am., Wyo. Inc.*, 964 P.2d 1245, 1251 (Wyo. 1998) ("Whether or not the employees read or signed [the employee manual distributed by their employer] makes no legal difference. The disclaimer, as well as all provisions of the entire handbook, are binding on the employer and the employee, even if the employee is unaware of them.").

In *Hardin v. First Cash*, a factually similar case arising in Oklahoma, the Tenth Circuit Court of Appeals construed an employee's continued employment as acceptance of the terms of a DRP, which was implemented by the employer several years after the plaintiff employee was hired. 465 F.3d at 472, 476-78. The plaintiff Shelle Hardin was hired by First Cash in 1997 as a manager for one of its stores. In December 2002, First Cash created a Dispute Resolution Program (DRP), requiring its employees to submit all employment-related legal disputes to arbitration. In a letter accompanying a copy of the DRP and a Dispute Resolution Agreement (Agreement), First Cash advised the employees they would not immediately be bound by the DRP, but after March 1, 2003, "participation became mandatory, and an employee's continued employment constituted acceptance of the terms of the DRP." *Id.* at 472. Although the Agreement allowed for the employee's

signature, it likewise reiterated that "an employee's continued employment with the company after March 1 would act to accept its terms regardless of whether the employee actually signed the Agreement." *Id.*

After discussing the DRP with her supervisor, Hardin refused to consent to the DRP and stated she would not quit and her continued employment was not intended to serve as her assent. Her supervisor responded that despite her statements to the contrary, her continued employment with First Cash would manifest her acceptance. Hardin never signed the Agreement and continued to work as a manager after March 1. In December 2003, First Cash fired Hardin, and Hardin subsequently filed suit alleging sex discrimination. First Cash moved to compel arbitration, claiming Hardin was bound by the DRP. *Id.* at 472-73. The district court denied the motion to compel arbitration, finding Hardin's conduct was not an "absolute and unqualified" acceptance of the DRP as evidenced by her failure to sign the Agreement and her statements to her supervisor. *Id.* at 473. The Tenth Circuit Court of Appeals reversed.

In determining whether Hardin's conduct acted to accept, or manifested her assent to, the DRP, the Court of Appeals noted Oklahoma follows "traditional contract principles in permitting acceptance of an offer by performance." *Id.* at 476 (citing Okla. Stat. tit. 15, § 70; and Restatement (Second) of Contracts § 19 (1981) ("The manifestation of assent may be made wholly or partly by written or spoken words *or by other acts or by failure to act.*") (emphasis added in *Hardin*)). The appellate court further found, "The Oklahoma Supreme Court . . . has held in the employment context that an employee's protest is ineffective against a unilateral change in an at-will employment contract when that

employee continues his employment." *Id.* (citing *Robinson v. Phillips Petroleum Co.*, 54 P.3d 322 (1936) (per curiam)). In other words, "the employee's continued performance manifested assent to the altered employment contract." *Id.* at 477. The Court of Appeals ultimately concluded the explicit language of the Agreement First Cash provided to Hardin constituted an offer, which stated that her continued employment after March 1 would manifest her assent to the DRP. *Id.* And, because First Cash rejected Hardin's "counteroffer", Hardin's continued employment after March 1 constituted acceptance of the terms of the DRP. *Id.* at 478.

Wyoming law has likewise recognized traditional contract principles in permitting acceptance of an offer by performance in the employment context. *See McDonald v. Mobil Coal Producing, Inc.*, 820 P.2d 986, 990 (Wyo. 1991) (adopting Restatement (Second) of Contracts § 19 (1979) ("The manifestation of assent may be made wholly or partly by written or spoken words or by other acts or by failure to act.")); *Brodie v. Gen. Chem. Corp.*, 934 P.2d 1263, 1265 (1997) ("An implied contract of employment is a unilateral contract, meaning that the offeror's promise is accepted by performance, and does not involve mutuality of obligation between the parties."). As in *Hardin*, Halliburton explicitly made an offer to Mr. Harvey – i.e., that his continued employment would manifest his agreement to be bound by the terms of the DRP. Thus, *Hardin* supports the determination that Mr. Harvey's conduct in continuing employment with Halliburton after August 15, 1999 constitutes acceptance and mutual assent.

B.   *Consideration*

Plaintiffs also contend Halliburton failed to provide adequate consideration for a modification to the parties' at-will employment contract, arguing additional consideration separate from continued employment must be provided. To be sure, Wyoming law provides that continued employment alone will not suffice as consideration for a modification of an employment contract *which restores at-will status*. *Brodie*, 934 P.2d at 1268. However, "[b]y its nature, . . . an at-will employment relationship is subject to modification at any moment by either party as a condition of it continuing at all." *Preston v. Marathon Oil Co.*, 277 P.3d 81, 85 (Wyo. 2012) (internal quotation marks and citation omitted). In other words, "[b]ecause of its terminable nature, either party has the power to modify the terms of the employment at any time, and the other party may either accept the new terms and carry on with the employment relationship or reject the new terms and terminate the relationship." *Id.* at 87. Since Mr. Harvey and Halliburton had an at-will employment relationship, no additional consideration was required to support his agreement to be bound by the terms of the DRP. *See id.* at 88.

C.      *Illusory Contract*

Finally, Plaintiffs suggest that because Halliburton reserved the right to unilaterally amend and/or terminate the DRP, the contract is illusory and therefore without adequate consideration. In support, Plaintiffs cite to *Kindred Healthcare*, which noted the holding in a Tenth Circuit case: "an arbitration agreement allowing one party the *unfettered* right to alter the arbitration agreement's existence or scope was illusory." 403 P.3d at 1024 (citing *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1219 (10th Cir. 2002)) (emphasis added). Here, Halliburton's DRP provides the plan may be amended or terminated by Halliburton

"at any time by giving at least 30 days' notice" to current employees. (ECF No. 7-7 at 19.) The DRP further provides, however, that neither amendment nor termination would apply or be effective to disputes which arise prior to the effective date of the amendment or termination. *Id.*

The plaintiff in *Hardin* raised a similar argument. In that case, First Cash retained the right to terminate or modify the DRP. 465 F.3d at 478. However, this right was limited: "[N]o amendment shall apply to any claims, disputes, or controversies of which the Company had actual notice on the date of the amendment, and termination of the [Agreement and/or DRP] shall not be effective until 10 days after reasonable notice of termination is given to Employee or as to claims, disputes, or controversies which arose prior to the date of termination." *Id.* The Court of Appeals found these limitations "sufficient to avoid rendering the parties' Agreement to arbitrate illusory." *Id.* Halliburton's right to amend or terminate the DRP is similarly limited and not unfettered. Because the DRP places reasonable restrictions on Halliburton's right to amend or terminate the arbitration agreement, the agreement is not illusory. *See id.* at 479.

D. *Scope of DRP*

The Halliburton DRP creates "an exclusive procedural mechanism for the final resolution of all Disputes falling within its terms." (DRP at 1, ECF No. 7-3.) "Dispute" is defined as "all legal and equitable claims, demands, and controversies, of whatever nature or kind, whether in contract, tort, under statute or regulation, or some other law, . . . including . . . [a]ny other matter related to or concerning the relationship between the Employee and the Company including . . . allegations of discrimination based on . . . age .

10

. . or disability[.]" *Id*. at 2.  Therefore, Mr. Harvey's age and disability discrimination claims are indisputably within the scope of the agreement.

Plaintiffs argue that because the contractual relationship between Mr. Harvey and Halliburton is disputed and Mrs. Harvey was not a Halliburton employee, Mrs. Harvey is not bound by the DRP and her loss of consortium claims do not fall within its scope. However, the Court has determined Mr. Harvey is bound by the terms of the DRP, and Mrs. Harvey's claims are derivative of her husband's and cannot exist independently. *Worman v. Carver*, 44 P.3d 82, 89 (Wyo. 2002).  Accordingly, Mrs. Harvey's loss of consortium claims are subject to arbitration.

## CONCLUSION

Mr. Harvey's conduct in continuing his employment with Halliburton constituted acceptance of and agreement to the terms of the DRP. Accordingly, the claims brought in this lawsuit are subject to arbitration under Halliburton's DRP. The Court further finds this matter should be stayed pursuant to 9 U.S.C. § 3. THEREFORE, it is hereby

ORDERED that the Defendant's *Motion to Compel Arbitration and Dismiss, or in the Alternative, to Stay the Proceedings* (ECF No. 7) is GRANTED; it is further

ORDERED that this matter is STAYED pending arbitration proceedings in accordance with the Halliburton DRP.

Dated this 1st day of April, 2019.

Scott W. Skavdahl
United States District Judge